[Civ. No. 1613.  First Appellate District.—July 23, 1915.]

JERSEY FARM COMPANY (a Corporation), Appellant, v. THE ATALANTA REALTY COMPANY (a Corporation), et al., Respondents.

ACTION TO QUIET TITLE—EASEMENTS—QUITCLAIM DEED—INTENT OF PARTIES—PAROL EVIDENCE—ISSUES—FINDINGS.—In an action to quiet title to certain easements by the successor in interest of the owner of the dominant tenement against the successor in interest of the owner of the servient tenement, parol evidence is admissible to show that a quitclaim deed of the servient land executed by the former to the latter was not intended as an extinguishment of the easements, but for the purpose of ending certain litigation in which the interested parties were involved; and where the trial court in making its findings ignores such evidence, and bases its findings entirely upon the legal effect and operation of the technical words "remise," "release," and "quitclaim" employed in the deed, there is a failure to find upon the material issue presented by the pleadings and the proof relative to the scope and effect of the deed in so far as it concerns the release and extinction of the claimed easements.

APPEAL from a judgment of the Superior Court of Contra Costa County and from an order denying a new trial.  A. I. McSorley, Judge presiding.

The facts are stated in the opinion of the court.

A. L. Shinn, C. L. Shinn, and M. R. Jones, for Appellant.

J. C. Meyerstein, H. U. Brandenstein, and A. B. McKenzie, for Respondents.

LENNON, P. J.—The plaintiff in this action sought to quiet its title to certain easements consisting of: 1.  The right to maintain and use a reclamation levee erected and situated on the land of the defendant; 2.  The right to have surface and seepage water flow through drainage canals situated on the land of the defendant; and, 3.  The right to maintain and use a pumping plant, also situated on the land of the defendant.

Plaintiff's cause of action proceeds entirely upon the theory that its right to the claimed easements had its source in their

obvious and permanent user by the owner of the original tract upon which they were constructed and erected, and that upon the severance of the unity of title of the original tract such right by implication and operation of law vested in plaintiff's predecessor in interest, and ultimately rested with the plaintiff.

The answer of the defendant, while denying the material allegations of plaintiff's complaint, pleads the special defense of a release of the claimed easements solely as the result of a quitclaim deed made and executed after the severance of the unity of title by the owner of the dominant tenement, plaintiff's predecessor in interest, to the owner of the servient tenement, defendant's predecessor in interest.

In its findings of fact the trial court declared that "said levee, canals, ditches and pump were constructed and installed as one general uniform system for the reclaiming and cultivating of said land, and were constructed and installed at great expense; that said, or some other levee, canals, ditches, and pump constructed as one general system for reclaiming said land and cultivating the same, and the whole thereof are absolutely indispensable for the use and cultivation thereof." The findings of the trial court, however, upon the issue of title to the claimed easements were made in favor of the defendant. Judgment was accordingly entered in favor of the defendant from which, and from an order denying a new trial the plaintiff has appealed. Heretofore one phase of the case was presented to, and passed upon by the supreme court upon an appeal by the defendant from an order of the court below granting the plaintiff's prayer for a preliminary injunction restraining the defendant from interfering with the repair and maintenance by the plaintiff of the levee, drainage canals, and pumping plant in controversy. (*Jersey Farm Co.* v. *Atalanta Realty Co.* 164 Cal. 412, [129 Pac. 593].) Upon that appeal the facts of the case were, in all of their essential features, identical with the proven and practically undisputed facts of the case as adduced upon the trial in the court below, and therefore, we shall adopt the following statement of facts found in the opinion rendered by Mr. Justice Henshaw upon the first appeal as a statement in part of the facts of the case upon the present appeal. "There is in the county of Contra Costa a tract of land comprising over 3900 acres which in the state of nature is overflowed by the waters of

the San Joaquin River. This land unreclaimed, is valueless, reclaimed, is very valuable. Years ago it was reclaimed by its then owner, the reclamation consisting of the construction of a levee around the exterior boundary of the tract, and the excavation of drainage canals conducting the water to the lowest part of the tract where a pumping plant was erected and the excess water pumped out of the canal and off the land. The levee, canals, ditches, and pumping plant were constructed, installed and operated as a single, indivisible system for reclaiming all of the land and they are still indispensable for its use and cultivation. In 1907 Nathan Fisher was the owner of the land. He made a deed of trust to Archibald Kains, trustee for the benefit of Myra E. Wright, beneficiary, to secure the payment of a sum of money owing by Fisher to Wright. The deed of trust contained a provision empowering Nathan Fisher or his grantee to demand reconveyance of any portion of the tract in lots of not less than fifty acres on the payment of a certain specified sum of money per acre. Herman Bendel by mesne conveyances succeeded to the title and rights of Fisher and tendering the requisite amount of money demanded from the trustee a reconveyance of fifty acres. The fifty acres whose reconveyance was thus demanded was the lowest land of the tract. Upon it was established the pumping plant to which pumping plant by a main canal were conducted the surplus waters of the whole tract. The exterior protecting levee extended along the river frontage of this tract. The trustee refused to make the conveyance and Bendel brought suit to compel him to do so. A decree was given commanding the execution of the deed which the trustee thereupon executed. Subsequently Bendel conveyed this fifty acres to the defendant and appellant herein. Previous to the execution of the trustee's deed to Bendel the trustee had executed under the terms of his trust a deed of all the rest of the tract to Myra E. Wright. To all the interest of Myra E. Wright in this plaintiff has succeeded. Defendant refused plaintiff admission to his lands for the purpose of maintaining and using the drainage canal, and maintaining and using the pumping plant to expel water from the drainage canal. Plaintiff insisted on his right to enter the land of appellant for these purposes.''

In addition to the facts just stated it further appeared upon the first appeal as it does upon the present appeal that

after the right of Bendel to redeem the land had been deter-
mined in his favor, the parties being desirous of ending the lit-
igation in which they were involved, entered into negotiations
for settlement of the controversy.   Bendel and his attorneys
were not satisfied with the trustee's deed hereinabove men-
tioned for various reasons, and all of the parties seemed to
agree that a quitclaim deed from Myra E. Wright, the bene-
ficiary under the trust-deed, was necessary to effectually can-
cel her rights in the suit and to vest title in Bendel.   Accord-
ingly a quitclaim deed was thereupon executed by Myra E.
Wright and the determination of this controversy depends
primarily upon the legal effect of that instrument.   The
quitclaim deed recited that the grantor of the deed "remise,"
"release," and "quitclaim" to the grantee the lands in ques-
tion.   It was asserted by the defendant upon the appeal in
the injunction proceeding, and it is reiterated here, that the
quitclaim deed was to be construed by its terms, and by its
terms alone, and that the effect of the recital of the words
"remise," "release" and "quitclaim" was to carry the title
to the lands in the deed, and with it all inferior interest,
and that these words operated as a release or extinction of
the right of plaintiff's predecessor in interest to the easements
in controversy.   Opposing this contention the plaintiff upon
the first appeal insisted, as it now contends, that in constru-
ing the deed of quitclaim, evidence of the facts and circum-
stances under which the deed of quitclaim and release was
executed were admissible to prove the intention of the parties
to the deed.   In the injunction proceeding the trial court per-
mitted evidence of the surrounding facts and circumstances
to explain the intention of the parties to the quitclaim deed,
and the supreme court in commenting upon this ruling said,
"The court . . . received evidence of the circumstances under
which the deed of quitclaim and release was executed, and
from this evidence concluded, as it had the right to do (Code
Civ. Proc., secs. 1860, 1861) that "release" was not employed
in its technical sense for the extinguishment of the easement,
but that the instrument of quitclaim and release was made
only for the purpose of carrying into effect the provisions
of the trustee's deed and of giving to Bendel simply the title
which the trustee's deed justified him in demanding."
(*Jersey Farm Co.* v. *Atalanta Realty Co.*, 164 Cal. 412, [129
Pac. 593].)   The present case went to trial upon the merits

while the injunction appeal was pending and evidence was
offered and received without objection, showing the situation
of the property upon which the claimed easements rested
and the circumstances surrounding the negotiations of the
parties with a view of ascertaining and establishing their
intent with reference to the scope, effect, and operation of
the quitclaim deed. This evidence was elicited from H. U.
Brandenstein, J. C. Meyerstein, and W. H. Wright, husband
of Myra E. Wright, all of whom testified that the object of
the execution of the quitclaim deed was the abandonment of
the appeal in the suit to redeem and the conclusion of the
existing litigation so as to vest in Bendel the title he was
seeking to obtain by suit. Wright, who joined with his wife
in the conveyance, gave positive testimony to the effect that
the object of the quitclaim deed and release was to give Bendel
such title as he was entitled to take under the trustee's
deed and no more. In addition to this direct evidence the
circumstances immediately attending the execution of the
quitclaim deed as shown in evidence without dispute or objec-
tion, tended strongly to negative any intent upon the part
of Myra E. Wright and her husband to relieve and release the
redeemed lands from the servitude with which they were origi-
nally impressed and burdened; and the force of those cir-
cumstances as evidence in that direction is intensified when
they are considered in conjunction with the fact as found
by the trial court, that the levee, canal, ditches, and pump
in controversy were absolutely indispensable to the use and
cultivation of the entire tract of land upon which they were
constructed and erected and which they originally served.
The judgment appealed from in the present case is assailed
principally upon the ground that the trial court failed to
fully find upon the material issue presented by the pleadings
and proof relative to the intent of the parties as to the scope
and effect of the quitclaim deed in so far as it concerned
the release and extinction of the claimed easements. In
this behalf it is the contention of plaintiff that the trial court
in making its findings of fact utterly ignored the direct and
circumstantial evidence covering and controlling the intent
of the parties as to the scope and effect of the quitclaim
deed, and based its findings entirely upon the legal effect
and operation of the technical words "remise," "release,"
and "quitclaim" as employed in the deed of quitclaim. This

contention, we think, is justified by the record before us and must be sustained. There is no direct finding, nor could there be under the evidence, that Myra E. Wright intended to convey and release to the defendant the easements in controversy. The trial court finds only that she executed a quitclaim deed which is set out in *haec verba* in the findings. No reference whatever is made in the findings as to what was the intent of the parties upon and in the making of the quitclaim deed. The gist of the case in our opinion involves the intent of the parties as to the effect of the quitclaim deed upon the plaintiff's right to the claimed easements, and that being so the findings as made do not respond to and cover the material issue of the ownership of that right. We are of the opinion that plaintiff was entitled to a finding in keeping with the trial court's impression of the undisputed direct and circumstantial evidence bearing upon the intent of the parties to the quitclaim deed, and in the absence of such finding the judgment and order appealed from must be, and they are, hereby reversed.

Richards, J., and Kerrigan., J. concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal was denied by the supreme court on September 20, 1915.

Sloss, J., dissented from the order denying a hearing in the supreme court.