[Civ. No. 8143.  First Appellate District,· Division Two.—February 9, 1932.]

A. P. SIGNORELLI, Respondent, v. W. S. EDWARDS et al., Appellants.

Schauer, Ryon & Goux and Griffith & Thornburgh for Appellants.

C. Kelley Hardenbrook for Respondent.

BURROUGHS, J., *pro tem.*—This is an action to quiet title. Judgment went for the plaintiff and the defendants W. S. Edwards and J. D. McCabe have appealed.

In the year 1884 a tract of land known as lot No. 142 of the Lompoc rancho, in the county of Santa Barbara,

was owned by one Shoultz and one Fisher, as tenants in common. By deeds of exchange Fisher became the sole owner of a part of said lot No. 142 and Shoultz became the sole owner of the balance thereof. A spring of water rises on the portion of the land deeded to Fisher, but it had been used for watering cattle kept on the entire tract. In the deed by which Fisher obtained sole title to his portion of the land it is provided that both Fisher and Shoultz have an equal right to the use and enjoyment of the waters of said spring and each one is entitled to appropriate one-half of the water of said spring without regard to the boundary lines between the lands of said parties. In the deed by which Shoultz obtained sole title to his part of the property appears the same language as in the Fisher deed above referred to except it is also stated that Shoultz shall have no right to enter the premises of Fisher to take or appropriate the water of said spring, unless there shall be an insufficiency of water on the premises of Shoultz and in case of such shortage, then only by laying a pipe to a trough on the Fisher premises and the said pipe to enter the trough not less than four inches from the bottom. In the year 1908, the defendants Edwards and McCabe acquired title to the Fisher place and in the year 1902, one Cantlay acquired title to the Shoultz place, and the title so continued until the year 1918.

About June 1, 1918, the plaintiff herein, A. P. Signorelli, and one of the defendants herein, Bert Signorelli, entered into a contract to purchase from the defendants Edwards and McCabe the Fisher place, which contract was on June 23, 1927, replaced by a new contract. The contract of sale just referred to, made no mention of any water right in the land described in the contract. On November 6, 1918, said A. P. and Bert Signorelli entered into a contract to purchase the Shoultz piece of land from Cantlay, the then owner, the contract expressly covering the water right on the Fisher place. In 1921 the plaintiff A. P. Signorelli went into sole possession of the Shoultz place and defendant Bert Signorelli went into the sole possession of the Fisher place. In the year 1927, defendant Bert Signorelli and wife assigned all their interest in the contract from Cantlay covering the Shoultz land to the plaintiff A. P. Signorelli and at the same time and place the latter and

his wife assigned all of their interest in the contract from the appellants Edwards and McCabe in and to the Fisher place to the defendant Bert Signorelli. The foregoing presents the record status of the property at the time of the commencement of this action on April 30, 1928, and establishes the record title to the use of one-half of the water of said spring and a right of way therefor in the plaintiff.

There is other evidence in the record, however, which it is claimed by the appellants Edwards and McCabe establish. that they are the owners of the waters of said spring by prescription and that plaintiff's cause of action is barred by the provisions of section 318 of the Code of Civil Procedure. Bearing in mind the oft-repeated rule of law that where testimony on a given question is conflicting, the burden of deciding the conflict rests upon the trial court, and that its decision may not be disturbed by the appellate courts, and the further rule that the elements of adverse user are, that the possession of property must be by actual occupancy, open and notorious; that it must be hostile to the true owner's title; that it must be under a claim of right; that it must be continuous and uninterrupted for a period of five years prior to the commencement of the action; and that it must appear that the claimant has paid all taxes on the property, we will proceed to examine the evidence as to whether or not defendants have established a title by adverse possession. James Cantlay testified that he acquired title to the property now owned by the plaintiff in 1902, and contracted to sell the property to the Signorelli brothers in 1918; that he first went upon the property in 1885; that he saw the spring of water referred to at the time; that there was a water trough on the fence line between the Fisher and Shoultz places; that the cattle from both the Shoultz and Fisher places used the trough for drinking purposes; that there was a big flow from the spring in 1885, and it ran down on to the Shoultz place and into the creek. The witness further testified that when he bought the Shoultz place in 1902, he made use of the water of the spring; that when he first got the property the cattle on both properties all drank out of the same trough; that method of use continued until the old trough rotted away, then one George King, who owned the Fisher place, put in a

new trough on his said place. The witness continued to receive plenty of water from the spring by digging trenches around the side of the hill; that the land was rocky and he dug holes between the rocks into which the water flowed and was used by the cattle; he was living on the place until 1918; that the land was rocky and the water naturally flowed on to his place and it was never taken away from him; that the land on both places was of the same character, all of it was used for grazing stock; that in 1910, defendant J. D. McCabe put a trough in near the spring and told the witness to hook on to the trough, but witness said he would not do so as long as he got plenty of water the way he was using it.

The witness further stated he always received water in sufficient quantities and ten times over. When Cantlay left the premises, A. P. Signorelli, the plaintiff, testified that he entered into the possession thereof; that when he entered into possession of the property in 1918, the water was coming down on the top of the ground from the spring and on to the Shoultz place in ample quantities for all the stock on the place; that in 1920, plaintiff, his brother Bert (one of the defendants), and another party, put in a box on the Fisher place and from the Fisher place put in a pipe to the box to run it down on to the Shoultz place. The water continued to run on to the Shoultz place and the water continued to flow that way until 1926; that he had never measured the quantity but there was water enough for all of his stock.

In 1926, the defendant Bert Signorelli first interfered with plaintiff's possession and use of the water on the Shoultz place by putting in a box below the spring and taking all of the water away from plaintiff. In 1928 the plaintiff commenced this action. Appellants claim that all the water that flowed to the Shoultz place was seepage and it did not appear that it necessarily came from the spring. But the evidence of the plaintiff is clear that as soon as the water of the spring was boxed and taken away in 1926, the water ceased to flow to the land of plaintiff and it is but a fair inference that the water came from the spring. There is other evidence which further supports the findings of the court and other evidence which contradicts it. This merely creates a conflict which, as we have heretofore

said, cannot be decided by this court. The foregoing establishes that there is substantial evidence that the possession claimed by appellants does not measure up to the requirements necessary to constitute adverse possession. (1 Cal. Jur., pp. 522, 523.) The foregoing conclusion being true it also necessarily follows that this action is not barred by section 318 of the Code of Civil Procedure.

It is next claimed that the record easement held by the plaintiff was extinguished by estoppel. This court having already held that there never·was an abandonment or a nonuser of the water by the plaintiff or his predecessors, there can be no estoppel. While it is true that neither the plaintiff nor his predecessor in interest ever diverted the water in the exact manner prescribed in the deed from Fisher to Shoultz, they did, however, use the water and in a manner apparently satisfactory to all parties until the year 1926. In *Burris* v. *People's Ditch Co.*, 104 Cal. 248 [37 Pac. 922, 923], it is held "that the owner of an easement cannot change its character, or materially increase the burden upon the servient estate, or injuriously affect the rights of other persons, but within the limits named he may make repairs, improvements, or changes that do not affect its substance". In support of the same principle may be added *Pacific Gas & Elec. Co.* v. *Crockett*, 70 Cal. App. 283 [233 Pac. 370]; *City of Gilroy* v. *Kell*, 67 Cal. App. 734 [228 Pac. 400]. Neither does the fact that in 1909 the defendant McCabe installed a box in the spring and took water away in a pipe to his own land affect the easement, as it clearly appears that he did not take it all and there was enough and ten times over, for all of the uses of the plaintiff that continued to flow to the latter's land, and was there used by him. The point is not well taken.

It is next claimed that the easement is too uncertain for enforcement. Preliminary to a discussion of this point, it may be well to call attention to the fact that from the year 1884 to the year 1926, the several owners of both properties interpreted the agreement creating the easement in such a manner that the water was used in a satisfactory manner and beneficially on both tracts of land. The easement as given by the deed from Fisher to Shoultz and established by the. court consists of the right to appropriate and take one-half of the water of the spring on the Fisher

place, whenever there was an insufficiency of water upon the said premises. Section 1636 of the Civil Code provides, "A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting so far as the same is ascertainable and lawful." It is undisputed that the lands here involved are useful for grazing purposes only and have always been put to that use. The court's finding number five is, "That the waters of said spring to which plaintiff is entitled as aforesaid are needful for the purpose of supplying live stock grazing upon plaintiff's said premises, and there is not sufficient water obtainable from springs, wells or streams upon plaintiff's said premises, to adequately supply live stock grazing thereon; and that there is now, and for a long time past, has been an insufficiency of water on said premises of plaintiff." The appellant attacks the use of the word "insufficiency" as being an abstract term without any specification to determine when there shall or shall not be an insufficiency or who shall determine that fact. Under the section of the Civil Code last cited, it is the duty of the court to give effect to the mutual intention of the parties as it existed at the time of contracting when it is lawful and ascertainable. It is clear that what the creators of this easement had in mind when they used the term "insufficiency" was such a lack of water originating on plaintiff's land as would impair the use of plaintiff's land for grazing cattle, and as the use of the land was never changed, it is certain that for such purposes the plaintiff is entitled to the water to the extent of one-half thereof whenever a shortage exists. As to who has a right to determine the question of the insufficiency of the quantity of water, the agreement itself provides that when there is an insufficiency of water the plaintiff may go upon the land for the purpose of taking the water. We therefore conclude that the plaintiff may exercise in the first instance the determination of when there is a shortage.

█ Appellants further contend that there was a merger of the record easement by operation of law. The evidence is undisputed that the easement never merged in one and the same person nor in one and the same right. To illustrate this point, the Signorelli brothers at one time held contracts of purchase for each piece of land but from dis-

tinct and separate ownerships. These contracts of purchase were never completed. Plaintiff A. P. Signorelli assigned his interest in the McCabe-Edwards contract to the defendant Bert Signorelli and the latter assigned his interest in the Shoultz contract to plaintiff. So far as the record discloses the defendant has never completed his contract with his co-defendants, and is not an appellant in this action. In the year 1927, the plaintiff completed his purchase from Cantlay and now owns the title thereto in fee simple. Section 811 of the Civil Code provides: "A servitude is extinguished: 1. By the vesting of the right to the servitude and the right to the servient tenements in the same person; . . ." In 14 Cyc. 1189, it is said: "Upon principle it seems that in order to extinguish an easement by the unity of title and possession of both the dominant and servient tenements in the same person, he should have a permanent and enduring estate, an estate in fee in both. At any rate, to perpetuate the extinguishment incident to unity of possession, the estates thus united must be respectively equal in duration and all other characteristics, and not liable to be again disjoined by the act of the law." We think that in the instant case there was no merger, because the estates were not "coextensive and equal in validity, quality and all other characteristics". (9 Cal. Jur., p. 959.) Further, at the time the two Signorellis agreed to divide the property the easement was in actual use and under section 1104 of the Civil Code the easement passed to the land conveyed. This doctrine is upheld in *Cheda* v. *Bodkin,* 173 Cal. 7 [158 Pac. 1025]; *Silviera* v. *Smith,* 198 Cal. 510 [246 Pac. 58]; *Cave* v. *Crafts,* 53 Cal. 135; *Jersey Farms Co.* v. *Atlanta Realty Co.,* 28 Cal. App. 128 [151 Pac. 547].

We find no reason for disturbing the judgment; it is, therefore, affirmed.

Nourse, P. J., and Sturtevant, J., concurred.