Filed 4/16/13

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| HAMILTON COURT, LLC, et al., | B240052 |
| Plaintiffs, Cross-Defendants and Respondents, | (Los Angeles County Super. Ct. No. BC437727) |
| v. | |
| EAST OLYMPIC, L.P., et al., | |
| Defendants, Cross-Complainants and Appellants. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Susan Bryant-Deason, Judge.  Reversed and remanded with instructions.

TroyGould, Jeffrey W. Kramer, Annmarie Mori for Defendants, Cross-Complainants and Appellants.

Vivoli Saccuzzo, Michael W. Vivoli for Plaintiffs, Cross-Defendants and Respondents.

———————————

Defendants East Olympic, L.P., a California limited partnership ("East Olympic"), and its general partner, Jack Wilder, appeal the judgment quieting title to an easement on certain commercial real property in favor of plaintiffs Hamilton Court, LLC ("Hamilton Court") and 3650 Olympic, L.P. ("3650 Olympic"). Defendants contend that the trial court erred in applying the doctrine of merger of title to the facts of this case. We agree, and so reverse the judgment.

FACTUAL AND PROCEDURAL BACKGROUD

Prior to 1983, East Olympic owned an entire city block on East Olympic Boulevard in Los Angeles. The block, consisting of multiple subdivided lots, contained several buildings and parking lots; one of the buildings, referred to at trial as the "Three Story Building," sat on two of these lots, straddling a lot line.

In January 1983, East Olympic sold the majority of the city block, including the Three Story Building, to Angelus Building Partnership; the parties refer to this as the "Angelus Property." East Olympic retained the southwest portion of the block, on which stood a one-story building, a two-story building, and an adjacent yard and shed. The parties refer to this as the "Wilder Property."

The division of the city block into two separately owned properties presented a predicament. The Three Story Building belonging to Angelus Building Partnership, and the yard and shed belonging to East Olympic, occupied portions of Lots 35 and 36. The owners intended to each own fee title in a portion of Lots 35 and 36, but a legal lot split was never completed to effectuate this intent. As a consequence, the East Olympic yard and shed encroached on the Angelus Property's Lot 35, while the Three Story Building encroached on the Wilder Property's Lot 36. In order to address this situation, in 1994, East Olympic and Angelus Building Partnership entered into an Easement Agreement in "lieu of entering into lot splits with respect to Lot 35 and Lot 36 at this time, . . . to provide for mutual easements with respect to such encroachments . . . ." The area of Lots 35 and 36 where East Olympic's yard and shed encroached on the Angelus Property was termed the "East Olympic Easement." The portion of the two lots where the Angelus

2

Property's Three Story Building encroached on the Wilder Property was described as the "AGPV Easement."

The Easement Agreement provides, with respect to the land within the boundaries of the East Olympic Easement, that East Olympic has the exclusive use of the easement area and may use the easement area for any lawful purpose; that East Olympic has the exclusive right to "alter, improve, develop, demolish and construct improvements" on the easement area;" that East Olympic is responsible for paying all taxes on the easement area; that East Olympic has the right to obtain fee title to the easement area at any time "without any additional consideration, as provided for under the [1983] Purchase Agreement;" and that Angelus must pay half of the cost of converting the easement to fee title. The Easement Agreement contains similar provisions regarding the AGPV Easement.

On March 29, 2005, the Angelus Property was conveyed by grant deed to plaintiffs Hamilton Court and 3650 Olympic as tenants in common.

At that time, East Olympic was in escrow to sell the Wilder Property with seller financing. That sale, vesting title to the Wilder Property in Hamilton Court and Venice National Group, LLC ("Venice National") as tenants in common, was consummated on May 16, 2005, for a purchase price of $3.8 million, consisting of $800,000 in cash and a $3 million, non-recourse promissory note (the "Note") payable to East Olympic. The purchasers executed a first deed of trust (the "Deed of Trust") in favor of East Olympic, which created a security interest in the Wilder Property and the East Olympic Easement. Just prior to the close of escrow, at the purchasers' request, East Olympic approved adding language to the Note and Deed of Trust permitting Venice National to transfer its interest in the property to 3650 Olympic "if such transfer is made subject to the Trustor's promissory note and this Deed of Trust and does not affect the priority of this Deed of Trust in any manner whatsoever." This proviso appears in both the Note and the Deed of Trust.

3

Venice National quitclaimed its interest in the Wilder Property to 3650 Olympic in July 2005. Upon that transfer, Hamilton Court and 3650 Olympic, as tenants in common, held record title to both the Angelus Property and the Wilder Property.

In late 2008, plaintiffs ceased making payments as they became due under the Note. East Olympic foreclosed under the Deed of Trust, and reacquired the Wilder Property at a foreclosure sale in June 2009.

By this lawsuit, plaintiffs seek to establish that East Olympic did not reacquire the East Olympic Easement at the foreclosure sale. That is to say, they sued for quiet title, contending that, pursuant to the doctrine of merger, the East Olympic Easement was extinguished in July 2005 when the record title to the Angelus Property and the Wilder Property were both held by plaintiffs as tenants in common.

Trial was to the court, which ruled in favor of plaintiffs. Defendants timely appealed the judgment subsequently entered.

STANDARD OF REVIEW

"The interpretation of an easement that does not depend on conflicting extrinsic evidence is a question of law. (*Van Klompenburg v. Berghold* (2005) 126 Cal.App.4th 345, 349; *McCann v. City of Los Angeles* (1978) 79 Cal.App.3d 112, 115, fn. 2.) We apply independent review to questions of law. (*Kellogg v. Garcia* (2002) 102 Cal.App.4th 796, 802-803.) To the extent that resolution of the appeal turns on factual findings made by the trial court, we review such findings under a substantial evidence standard." (*Beyer v. Tahoe Sands Resort* (2005) 129 Cal.App.4th 1458, 1470.)

DISCUSSION

Civil Code section 811 provides, "A servitude is extinguished: [¶] 1. By the vesting of the right of the servitude and the right to the servient tenement in the same person; . . ." while section 805 of the same code states: "A servitude thereon cannot be held by the owner of the servient tenement." The rationale for these statutes is "to avoid nonsensical easements – where they are without doubt unnecessary because the owner

4

owns the estate." (*Beyer v. Tahoe Sands Resort*, *supra*, 129 Cal.App.4th at p. 1475.) Plaintiffs argue that, pursuant to Civil Code section 811, the moment Venice National conveyed its interest in the Angelus Property to 3650 Olympic, so that the Angelus Property and the Wilder Property were vested "in the same persons," the East Olympic Easement was extinguished as a matter of law.

Though a simple reading of the Civil Code would support plaintiffs' position, "[t]he union of a lesser and greater estate does not always result in a merger. The doctrine of merger is applied only where it prevents an injustice and serves the interests of the person holding the two estates, in the absence of evidence of a contrary intent. It is not applied where it results in an injustice, injury, or prejudice to a third person. [¶] . . . [¶] Whether or not there has been a merger depends on the actual or presumed intention of the parties and is a question of fact. A stipulation between the parties that there will not be a merger usually is respected and enforced. There will be no merger if it would be inequitable. If inequitable, it is presumed that there is no merger, but this presumption can be overcome by evidence that the parties intended a merger upon the union of the estates." (4 Miller & Starr, Cal. Real Estate (3d ed. 2006) § 10:41, fns. omitted.)

Defendants contend that the "general rule" of merger does not apply to the facts of this case because, among other reasons, the parties agreed otherwise. By way of the Deed of Trust, Hamilton Court and Venice National pledged the East Olympic Easement as security for the Note. In addition, Venice National obtained East Olympic's permission to transfer its interest in the Wilder Property to 3650 Olympic by agreeing that, in so doing, it would not jeopardize the collateral securing its loan. Specifically, the Deed of Trust granted Venice National permission to transfer its interest in the Wilder Property to 3650 Olympic "if such transfer is made subject to the Trustor's promissory note and this Deed of Trust and does not affect the priority of this Deed of Trust in any manner whatsoever."

Plaintiffs contend that extinguishing the East Olympic Easement has no effect on the priority of the Deed of Trust, and hence does not violate the parties' agreement. We

5

cannot agree. In the absence of a merger, East Olympic would have had a first priority security interest in the land covered by the East Olympic Easement. If as plaintiffs' maintain, the East Olympic Easement were extinguished by operation of law in July 2005 when they acquired title to both properties, East Olympic thereafter had no security interest at all in the East Olympic Easement, because it was no longer extant. We agree with defendants that this result – going from first priority to no priority – is inconsistent with the parties' agreement that any transfer would "not affect the priority of this Deed of Trust in any manner whatsoever." In short, by agreeing (1) to burden the East Olympic Easement with a security interest in favor of East Olympic, and (2) that any transfer to 3650 Olympic would be subject to the Deed of Trust and would not affect the priority of that security interest, plaintiffs in effect stipulated that there would be no merger under Civil Code section 811 so long as the Deed of Trust remained in effect.

## DISPOSITION

The judgment is reversed. The matter is remanded to the trial court with instructions to quiet title to the East Olympic Easement in defendant East Olympic. Defendants are to recover their costs of appeal.

**CERTIFIED FOR PUBLICATION**


ARMSTRONG, J.


I concur:


TURNER, P. J.


6

MOSK, J., Concurring

I concur.

Although the deed of trust refers to "priority," which could be viewed as just referring to a priority over other liens, I agree with the majority's view.

There is another ground that should support the judgment: That is, there is or should be a so-called mortgage—in this case, deed of trust—exception to the merger doctrine. There is no authority in this state on that point. But as one authority has written, "it has been held that an easement is not terminated by merger when the dominant tenement is encumbered by a deed of trust or a mortgage at the time ownership of the servient and dominant tenement is united in the same party. Preventing merger in such case equitably preserves the mortgagee's security." (Ely and Bruce, The Law of Easements & Licenses in Land (2013) § 10:27 (fn. omitted); see *Pergament v. Loring Properties, Ltd.* (Minn. 1999) 599 N.W.2d 146, 149-151; *Lewitz v. Porath Family Trust* (Col.App. 2001) 36 P.3d 120; *Heritage Communities of N.C., Inc. v. Powers, Inc.* (1980) 272 S.E.2d 399; 2 Rest.3d Property, Servitudes, § 7.5, com. d; Stolpman, *Property Law— To Merge or Not To Merge: Determining the Scope of Mortgage; The Mortgage Exception to the Merger Doctrine Pergament v. Loring Properties, Limited, 599 N.W.2d 146 (Minn. 1999)* (2000) 27 Wm. Mitchell L. Rev. 1331).

To extinguish the interest of the beneficiary of a deed of trust or mortgage security by merger would "jeopardize, if it did not wholly destroy, the stability of every [such] security." (*Duval v. Becker* (Md. 1895) 32 A. 308, 310.) In this case and most such cases, the holder of the security is not a party to the transaction giving rise to the merger doctrine. It would be inequitable under the circumstances here to extinguish the security

rights of such a beneficiary of the deed of trust when that security holder has no control over the transaction upon which extinguishment of the easement by the merger doctrine is claimed.

MOSK, J.