Filed 4/15/14  Ramirez v. Smurfit-Stone Container Corp. CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| NANCY RAMIREZ, | B247935 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC454454) |
| v. | |
| SMURFIT-STONE CONTAINER CORPORATION, | |
| Defendant and Respondent. | |

_____

APPEAL from a judgment of the Superior Court of Los Angeles County, Kevin C. Brazile, Judge.  Reversed and remanded.

Alan Burton Newman and Alan Burton Newman for Plaintiff and Appellant.

Constangy, Brooks & Smith and Jennifer Raphael Komsky for Defendant and Respondent.

_____

Nancy Ramirez sued her former employer, Smurfit-Stone Container Corporation, for wrongful termination in violation of the Moore-Brown-Roberti Family Rights Act (CFRA) (Gov. Code, §§ 12945.1, 12945.2)[1] and several other employment-related causes of action. Ramirez appeals from the judgment entered on the CFRA claim after a bench trial in which the court found Smurfit-Stone had properly terminated Ramirez when she failed to return to work following an authorized period of medical leave. Because the evidence at trial unequivocally established Smurfit-Stone terminated Ramirez because of her failure to comply with its improper demand for documentation beyond that authorized by the CFRA, we reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *Ramirez's Stress-related Medical Leave*

Smurfit-Stone is a global paperboard and paper-based packaging company headquartered in Missouri. After working at Smurfit-Stone through an employment agency, Ramirez was hired directly by the company in early 2010 as a weighmaster at its Santa Fe Springs facility.

During the first week of November 2010 Ramirez learned she was the subject of a sexually offensive rumor being circulated by another employee, Jesse Hernandez. On November 5, 2010 Ramirez spoke to her supervisor, Pauline McAteer, and filed a written complaint for sexual harassment. Smurfit-Stone conducted an investigation and fired Hernandez shortly thereafter. On November 8, 2010 Ramirez went on medical leave as a result of the anxiety caused by the experience. She provided the company with off-work notes covering the period November 8, 2010 through November 29, 2010 (and possibly also through December 6 or 7, 2010) prepared by her physician at Kaiser Medical Center. She was terminated as of December 16, 2010 without returning to work.

The December 17, 2010 termination letter, signed by Stephanie Garvey, Area Employee Relations Manager, explained the grounds for Ramirez's discharge: "You have been asked multiple times to provide certification information to Lauren Case,

---

[1]     Statutory references are to the Government Code unless otherwise indicated.

Benefits Representative at Smurfit-Stone Container Corporation, regarding your on-going treatments and your need to remain on Short Term Disability.  You were sent a FINAL notice dated November 30, 2010 notifying you that your Short-Term Disability Benefits would be suspended on December 15, 2010 unless certification was provided.  [¶]  As a result of your not providing documentation by the given deadline, we are terminating your employment with Smurfit-Stone, effective December 16, 2010 and the Company will take all measures to obtain the overpayment you have received since November 15, 2010."

2. *The Complaint and Smurfit-Stone's Answer and Affirmative Defenses*

On February 4, 2011 Ramirez filed a complaint asserting causes of action against Smurfit-Stone for sexual harassment (§ 12940 et seq.), retaliation for making a sexual harassment claim (§ 12940, subd. (h)) and denial of leave in violation of the CFRA (§ 12945.2) and against Hernandez (identified only as "Jessie (last name unknown)") for sexual harassment.  The complaint alleged Hernandez had repeatedly made offensive statements to Ramirez including, "You're sexy" and "I wish you would just date me," and falsely told others that Ramirez was having sex with him, which caused her anxiety and an acute stress reaction.  Ramirez also alleged she had been terminated while she was on medical leave a few weeks after her attorney had sent Smurfit-Stone a letter demanding compensation for sexual harassment.

Smurfit-Stone's answer to the unverified complaint contained a general denial and 27 affirmative defenses.  The sixth separate and affirmative defense alleged any action with respect to Ramirez's employment was taken for legitimate, nondiscriminatory reasons.  The seventh separate and affirmative defense alleged Smurfit-Stone would have made the same decision with respect to Ramirez's employment even in the absence of any alleged discriminatory intent.  Smurfit-Stone also filed a cross-complaint seeking reimbursement of the disability benefits it had paid to Ramirez.

3. *The Trial*

In May 2012 the court granted Smurfit-Stone's motion for summary adjudication as to Ramirez's claim for sexual harassment on the ground the harassment was not severe or pervasive. Summary adjudication was denied as to Ramirez's claims for retaliation for making a sexual harassment claim and for violation of the CFRA.[2]

In November 2012 a bench trial was held on Ramirez's remaining claims. The trial court heard live testimony from Ramirez and McAteer, received a declaration in lieu of live testimony from Lauren Case and admitted the deposition testimony of Dr. Peter Chong, the Kaiser physician who had provided Ramirez's work status reports. Garvey's declaration in support of Smurfit-Stone's motion for summary judgment or summary adjudication, in the alternative, was also admitted into evidence. Smurfit-Stone dismissed its cross-claim for reimbursement of disability payments after Ramirez completed her case-in-chief.

Ramirez testified she first learned there were rumors she was having sex with Hernandez on Wednesday, November 3, 2010. On November 5, 2010 Ramirez spoke to McAteer and filed a written complaint for sexual harassment. Ramirez was so distressed by the rumor she went to see Dr. Chong at Kaiser. Dr. Chong gave Ramirez a "work status report" stating, "This patient is placed off work from 11/8/2010 through 11/12/2010." On Monday, November 8, 2010, Ramirez personally gave the report to McAteer.

Ramirez also testified she had several telephone conversations with Case, who worked in the St. Louis, Missouri headquarters. In one of her conversations Ramirez asked Case to send the medical certification form directly to Dr. Chong for him to complete. Ramirez also advised Case in another conversation she needed her leave extended by an additional month to a month and one-half because her condition had worsened. Although Ramirez did not remember Case's response to the extended leave request, she testified Case did not tell her she could not have the additional leave.

---

[2] Ramirez had earlier dismissed her claim against Hernandez for sexual harassment.

In her trial declaration Case stated she explained to Ramirez by telephone on November 9, 2010 the benefits available during her leave of absence and the information required to approve the leave. At Ramirez's request Case faxed a health care provider certification form to Dr. Chong's office, but Case informed Ramirez it was her responsibility to ensure the completed form was returned to Smurfit-Stone by November 27, 2010. The form, prepared by the United States Department of Labor entitled "Certification of Health Care Provider for Employee's Serious Health Condition (Family and Medical Leave Act)," sought information including "relevant medical facts, if any, related to the condition for which the employee seeks leave (such medical facts may include symptoms, diagnosis, or any regimen of continuing treatment such as the use of specialized equipment)" and whether any medication had been prescribed. In a November 12, 2010 transmittal letter from Case to Ramirez, Smurfit-Stone advised Ramirez, "Your length of service entitles you to 26 weeks of Short Term Disability leave, with 4 weeks paid at 100%, and an additional 22 week(s) paid at 60%. You are currently not eligible for leave under the FMLA [(Family Medical Leave Act)] until 3/15/2011, as you have not completed the required 1 year of service." The letter did not address Ramirez's rights under the CFRA.

Ramirez testified Dr. Chong completed a second work status report using the same form as the first one, not the form required by Smurfit-Stone, placing her off work from November 15, 2010 through November 29, 2010; she believed his office faxed the report to Smurfit-Stone. She also recalled a third work status report. Although Ramirez initially said it extended her leave for an additional two weeks, she acknowledged she had testified at her deposition that it extended her leave for only one more week (through December 6 or 7, 2010). Ramirez further testified, notwithstanding considerable effort to find a full-time job after termination, she had only earned about $2,000 from part-time work.

Dr. Chong testified his records reflected he had spoken to Ramirez on the telephone before he issued the second work status report, not in person as Ramirez recalled, and she had requested the leave be extended until December 13, 2010.

Dr. Chong, however, extended Ramirez's leave to only Monday, November 29, 2010, because she was scheduled to see a psychiatrist that day. Dr. Chong told Ramirez it was important for her to follow up with the psychiatrist "[s]o the further extension could come up from the psychiatric department." Ramirez acknowledged Dr. Chong advised her to see a psychiatrist, but explained she cancelled the appointment because she could not afford to pay the additional fee that was required even though she had medical insurance.

In a December 1, 2010 letter Case informed Ramirez the due date for the initial certification had expired. The letter stated, "This is your final notice to have your treating physician complete and return the medical certification form to me by December 15, 2010. Unless complete & sufficient documentation is received from your physician on or before the specified due date, the Company will suspend your Short-Term Disability Benefits effective December 16, 2010. [¶] Failure to comply with the Family & Medical Leave Act requirements and Company policy may result in disciplinary action, up to and including termination resulting in the repayment of all Short Term Disability Benefit earnings received from November 8, 2010 to date."

In her trial declaration Case explained she sent Dr. Chong's office a second request for medical certification after Ramirez told her Dr. Chong's office had not received the initial paperwork. Nevertheless, she stated, "As of December 1, 2010 I still had not heard from or received anything from Ms. Ramirez or her physician. . . . [¶] As of December 16, 2010 I had not received anything from Ms. Ramirez, her physician, or anyone purporting to act on Ms. Ramirez's behalf. I was not made aware of anyone from my office having received anything from Ms. Ramirez or anyone purporting to act on Ms. Ramirez's behalf, including, but not limited to her attorney." Case also explained, "When Ms. Ramirez failed to comply with the requirements set forth to establish an approved leave of absence, her absences became 'unexcused' and fell under the adherence to the company's attendance policy. My recollection is that Smurfit[-Stone]'s attendance policy quantifies a period of absences for up to 3 days of 'no call no show' as job abandonment." Case's declaration did not address Ramirez's testimony that she had requested an additional month to a month and one-half leave.

6

Although Case's declaration stated she had not seen any documents justifying any portion of Ramirez's medical leave, McAteer testified she had sent the work status reports prepared by Dr. Chong to Smurfit-Stone's human resources department. McAteer, who had left the company by the time of trial, did not know why the work status reports were not produced by Smurfit-Stone during discovery.

As discussed, in a December 17, 2010 letter from Garvey, Ramirez was informed she had been terminated effective December 16, 2010 because of her failure to provide documentation by the specified deadline. In her declaration admitted into evidence, Garvey stated, "I terminated Ms. Ramirez's employment solely on the basis of her failure to provide the documentation supporting her disability leave." At trial Smurfit-Stone essentially conceded the reports from Dr. Chong excusing Ramirez from work through November 29, 2010 were sufficient under the CFRA and argued Ramirez was lawfully terminated because there was no documentation justifying leave after that date.

4. *The Trial Court Decision*

After closing arguments the trial court found in favor of Smurfit-Stone on Ramirez's retaliation claim; Ramirez does not contest that ruling. The court took Ramirez's claim for violation of the CFRA under submission and requested additional briefing. The court subsequently found in favor of Smurfit-Stone on the claim: "[Ramirez] failed to prove by a preponderance of evidence that she provided medication document [*sic*] to [Smurfit-Stone] to support her disability leave beyond December 7, 2010. Since any medical leave of [Ramirez] beyond December 7, 2010, was not pursuant to authorized or approved medical leave her termination of employment of December 17, 2010 was appropriate."

**DISCUSSION**

1. *Standard of Review*

On appeal we review the trial court's factual findings for substantial evidence (*Hamilton Court, LLC v. East Olympic. L.P.* (2013) 215 Cal.App.4th 501, 505; *Kuhn v. Department of General Services* (1994) 22 Cal.App.4th 1627, 1633) and its conclusions of law de novo (*Crocker National Bank v. City and County of San Francisco* (1989)

7

49 Cal.3d 881, 888; *Palm Property Investments, LLC v. Yadegar* (2011) 194 Cal.App.4th 1419, 1425-1426; *ASP Properties Group, L.P. v. Fard, Inc*. (2005) 133 Cal.App.4th 1257, 1266).

2. *Overview of the CFRA*

The CFRA, the state corollary of the Family and Medical Leave Act of 1993 (29 U.S.C. §§ 2601-2654 (FMLA)), "is intended to give employees an opportunity to take leave from work for certain personal or family medical reasons without jeopardizing job security." (*Nelson v. United Technologies* (1999) 74 Cal.App.4th 597, 606; accord, *Faust v. California Portland Cement Co.* (2007) 150 Cal.App.4th 864, 878 (*Faust*).) The CFRA requires an employer of 50 or more persons to grant a request by a qualified employee to take up to 12 weeks in any 12-month period for family care or medical leave. (§ 12945.2, subds. (a), (c)(2)(A); see *Faust,* at p. 878.) Grounds for leave include family needs such as the birth or adoption of a child, serious illness of a family member and "an employee's own serious health condition" when that condition "makes the employee unable to perform the functions of the position of that employee. . . ." (§ 12945.2, subd. (c)(3)(C).) The CFRA defines a "[s]erious health condition" as "an illness, injury, impairment, or physical or mental condition that involves either of the following: [¶] (A) Inpatient care in a hospital, hospice, or residential health care facility. [¶] (B) Continuing treatment or continuing supervision by a health care provider." (§ 12945.2, subd. (c)(8).)

An employer may require an employee's request for leave be supported by a certification from the employee's health care provider. (§ 12945.2, subd. (k)(1).) The requested certificate "shall be sufficient if it includes all of the following: [¶] (A) The date on which the serious health condition commenced. [¶] (B) The probable duration of the condition. [¶] (C) A statement that, due to the serious health condition, the employee is unable to perform the function of his or her position." (*Ibid.*; see *Lonicki v. Sutter Health Central* (2008) 43 Cal.4th 201, 211 [§ 12945.2, subd. (k)(1), "*limits the type of information that an employer can require an employee to provide in a certification*"].) The information an employer may request under the CFRA is more

8

limited than the information an employer may request under FMLA. (See 29 C.F.R. § 825.306 (eff. Jan. 16, 2009 to Mar. 7, 2013) [when leave is taken because of employee's own serious health condition, employer may require medical facts including "symptoms, diagnosis, hospitalization, doctor visits" and "whether any medication has been prescribed"].)

It is an unlawful employment practice for an employer "to interfere with, restrain, or deny the exercise of, or the attempt to exercise, any right" provided by the CFRA. (§ 12945.2, subd. (t).) It is also an unlawful employment practice to discharge or discriminate against any individual because of his or her exercise of the right to family care or medical leave as provided by the CFRA. (§ 12945.2, subd. (*l*)(1).)

3. *The Trial Court Erred in Concluding Smurfit-Stone Did Not Violate the CFRA*

As discussed, the evidence at trial, all essentially undisputed, established that Ramirez left work on November 5, 2010 because she was upset by sexually offensive rumors being circulated by a coworker; Ramirez requested medical leave for stress/anxiety initially for one week, supported by a work status report from Dr. Chong, and then in a telephone conversation with Case for an additional month or month and one-half (that is, extending into mid-December); Smurfit-Stone requested that Ramirez provide documentation in support of her request for medical leave using a form designed for the FMLA, which required information that exceeded the requirements of the CFRA; Ramirez submitted two work status reports prepared by Dr. Chong documenting her need for a medical leave through the period ending November 29, 2010 (and perhaps through December 6 or 7, 2010, as found by the trial court) that complied with the CFRA certification requirements; although McAteer received two work status reports from Dr. Chong, apparently neither Garvey nor Case was aware the reports had been provided; and the December 17, 2010 termination letter signed by Garvey and Garvey's declaration testimony both stated the sole reason Ramirez was being discharged was her failure to provide any of the requested documentation.

Notwithstanding that Garvey and Case both testified (and the December 17, 2010 letter confirmed) Ramirez was terminated because she had not provided any

9

documentation supporting her request for medical leave, Smurfit-Stone argued at trial Ramirez had been discharged because she failed to return to work after the expiration of her leave of absence. The trial court erred in accepting that post hoc justification for Ramirez's discharge and entering a judgment in favor of Smurfit-Stone.

First, Ramirez's unrefuted testimony she advised Case in a telephone conversation sometime during the first two weeks of November that she needed an additional month or month and one-half of medical leave because her stress/anxiety condition had worsened was sufficient to invoke her rights under the CFRA for the period of leave requested: "An employee shall provide at least verbal notice sufficient to make the employer aware that the employee needs CFRA-qualifying leave, and the anticipated timing and duration of the leave. The employee need not expressly assert rights under CFRA or FMLA, or even mention CFRA or FMLA, to meet the notice requirement; however, the employee must state the reason the leave is needed . . . ." (Cal. Code Regs., tit. 2, former § 7297.4, subd. (a)(1), renumbered as § 11091, subd. (a)(1), effective Oct. 3, 2013.) It was then Smurfit-Stone's responsibility to inquire further if it believed more information was necessary. (*Ibid.*)

Second, to the extent Smurfit-Stone conditioned Ramirez's exercise of her right to medical leave under the CFRA upon the provision of personal information beyond that authorized by section 12945.2, subdivision (k)(1), or then terminated her employment for exercising her right to medical leave without providing that information—as it clearly did, at least in part—it engaged in an unlawful employment practice as defined in section 12945.2, subdivisions (*l*) and (t). (See *Lonicki v. Sutter Health Central*, *supra*, 43 Cal.4th at p. 211 [employer may not deny an employee's request for medical leave for failure to provide information beyond that deemed sufficient by § 12945.2, subd. (k)(1); "[i]f an employer fires an employee who has given the employer a facially valid certification in support of a request for medical leave and the employee then sues for violation of the CFRA, the employer may not defend the suit by asserting that the employee, when requesting leave, provided insufficient evidence that the employee fell within the provisions of the CFRA"]; see also *Avila v. Continental Airlines, Inc.* (2008)

10

165 Cal.App.4th 1237, 1259-1260 [under the CFRA employer bears the burden of determining whether an employee's leave is protected; "[o]nce an employee has submitted a request for leave under [the] CFRA, the employer is charged with knowledge that the employee's absences pursuant to the leave request are protected, and may not thereafter take adverse employment action against the employee based upon—that is, 'because of'—those protected absences"]; *Dudley v. Department of Transportation* (2001) 90 Cal.App.4th 255, 264 [gravamen of a claim under § 12945.2, subd. (*l*), is "the employer's adverse action against the employee in retaliation for the employee's exercise of her right to CFRA leave"].)  There simply was no evidentiary support for Smurfit-Stone's trial position that Ramirez was, in fact, discharged solely because she did not return to work after November 29, 2010 (or December 6 or 7, 2010), rather than because she failed to submit an adequate health-care-provider certification for any portion of her absence from work after November 5, 2010.  (See *Mardirossian & Associates, Inc. v. Ersoff* (2007) 153 Cal.App.4th 257, 273, fn. 7 [substantial evidence requires evidence of ""'ponderable legal significance, . . . reasonable in nature, credible, and of solid value"'"].)

## DISPOSITION

The judgment is reversed, and the matter remanded for a new trial on the issue of damages.  Ramirez is to recover her costs on appeal.


PERLUSS, P. J.

We concur:


ZELON, J.


SEGAL, J. *

---

\*      Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

11