Filed 6/28/23  Louderback v. Walking U Ranch CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

|  |  |
|---|---|
| JOHN R. LOUDERBACK et al.,<br><br>    Plaintiffs, Cross-defendants and Appellants,<br><br>v.<br><br>WALKING U RANCH, LLC, et al.,<br><br>    Defendants, Cross-complainants and Respondents. | 2d Civ. No. B318275<br>(Super. Ct. No. 17CV05630)<br>(Santa Barbara County) |

Plaintiffs' complaint sought to enforce a right of way easement across defendants' land.  Defendants cross-complained to quiet title against the claim of easement.  The trial court awarded judgment to defendants and against plaintiffs.  Why?  Because the easement was terminated by merger.  We affirm.

FACTS

This appeal concerns two large parcels of real property in rural Santa Barbara County.  In 1972, Roger and Willa Morehart

(the Moreharts) owned the Walking U Ranch (the Ranch). The Morehart's children and a daughter-in-law (collectively the Morehart Children) owned an undivided 25 percent interest in a neighboring property known as the "793 Acres."

In 1972, the Moreharts granted a right of way easement (the easement) across the Ranch to the Morehart Children for access to the 793 acres. The Morehart Children were the sole grantees of the easement, and no other owners of the 793 Acres were included in the grant.

In 1972, the Moreharts sold the Ranch to Theodore and Katherine Okie (the Okies). In 1973, the Morehart Children sold their 25 percent interest in the 793 Acres to the Okies. Theodore Okie testified that he and his wife purchased the Morehart Children's 25 percent interest to prevent anyone from claiming a right to cross the Ranch.

In 2006, Glen Goldin purchased the Okie's 25 percent interest in the 793 Acres. No easement was included in the transfer.

In 2010, Goldin sold the 25 percent interest in the 793 Acres to John Louderback. Louderback acquired the remaining 75 percent interest in the 793 Acres in 2013. He subsequently transferred co-ownership to his wife, Jacqueline Louderback.

Kathleen March and Patrick Bright acquired the Ranch in 2010. John Louderback was the managing agent for the entity that sold the Ranch to March and Bright. Louderback signed a disclosure statement that did not mention the easement. March and Bright transferred their interest in the Ranch to Walking U Ranch, LLC.[1]

---

[1] Hereafter "the Ranch" includes March, Bright, and Walking U Ranch, LLC, collectively.

In March 2016, March challenged the Louderbacks' use of the easement.  In March 2017, a lock was placed on the northern entrance gate to the Ranch, preventing the Louderbacks from using the easement.

*Lawsuit*

After negotiations proved unsuccessful, the Louderbacks filed suit against the Ranch.  The Louderbacks' second amended complaint includes causes of action for: 1) quiet title to the right of way by express easement or in the alternative easement by implication, prescription, equity, or necessity; 2) declaratory relief; 3) interference with easement; 4) nuisance; 5) slander of title; 6) unfair competition and unfair business practices; and 7) interference with prospective economic relations.

The Ranch filed a cross-complaint.   The second amended complaint alleges causes of action for 1) quiet title; 2) declaratory relief; 3) fraudulent concealment in violation of Civil Code[2] section 1102; 4) violation of common law duty to disclose; 5) negligent concealment; and 6) financial elder abuse of Bright.  The matter proceeded to a court trial, at which time the Ranch was named the prevailing party.

*Statement of Decision*

At the Louderbacks' request, the trial court issued a statement of decision.

At trial the Ranch argued that the easement was only a personal right in the Morehart Children that did not transfer to their successors.  The court did not reach that issue.  Instead, the court assumed it was a valid easement.  The court found, however, that the easement had been terminated by merger

---

[2] All further references are to the Civil Code unless otherwise indicated.

3

when the Okies acquired both the Ranch and the Morehart Children's 25 percent interest in the 793 Acres.

The trial court also found that the Louderbacks did not carry their burden to prove an easement by necessity, an implied easement, prescriptive easement, or equitable easement. The court found for the Ranch on its causes of action for negligent concealment and breach of the common law duty to disclose. But the court found that the Ranch suffered no damages. Finally, the court found that Bright had not proven his cause of action for elder abuse.

### *Judgment*

On the Louderbacks' second amended complaint, the trial court gave judgment in favor of the Ranch and decreed that the Louderbacks take nothing on any of their causes of action.

On the Ranch's cross-complaint, the trial court quieted title in favor of the Ranch and declared that the Louderbacks and all persons unknown have no easement to cross the Ranch and no right to enter the Ranch. The court found for the Louderbacks on the Ranch's causes of action for intentional concealment and elder abuse. The court awarded costs to the Ranch as the prevailing party.

### DISCUSSION

### I. *Merger*

The Louderbacks contend the trial court erred in concluding that the easement was terminated by merger.

An easement is an interest in the land of another that allows the easement owner a limited use of the other's land. (*Zissler v. Saville* (2018) 29 Cal.App.5th 630, 638; see 12 Witkin, Summary of Cal. Law (11th ed. 2017) Real Property, § 396, p. 454.) The land benefited by an easement is called the

4

dominant tenement; the land burdened by the easement is called the servient tenement. (§ 803.) It follows from the definition of an easement as an interest in the land of another that a property owner cannot have an easement in his own land. (§ 805 ["A servitude thereon cannot be held by the owner of the servient tenement"].) Thus when the same person or persons obtains both the dominant and servient parcels, the easement is terminated by merger. (§ 811 ["A servitude is extinguished: 1) [b]y vesting of the right to the servitude and the right to the servient tenement in the same person"]; see 12 Witkin, Summary of Cal. Law (11th ed., p. 502.) An easement once terminated by merger does not come into existence again merely by severing the united estates. (*Zanelli v. McGrath* (2008) 166 Cal.App.4th 615, 634.)

Here in 1973, the Okies owned both the Ranch (servient tenement), and the Morehart Children's 25 percent interest in the 793 Acres, (dominant tenement). The trial court correctly concluded that the easement was extinguished by merger.

The Louderbacks argue that the Morehart Children were not the sole owners of the easement. They rely on language in the easement language in the easement deed allowing use of the right of way by "tenants and occupants of the premises now held by Grantee." In context the language applies only to tenants and occupants under the Morehart Children's title. The Morehart Children are the only parties listed under "Grantee" in the easement deed. The Louderbacks point to no evidence the Moreharts intended to benefit anyone other than their children in creating the easement. The easement created no rights independent of the Morehart Children's title. All right, title, and interest in the Morehart Children's 25 percent interest was transferred to the Okies.

5

The Louderbacks argue that merger does not apply where either the dominant or servient tenements are held in fractionalized ownership. The argument is supported by neither logic nor the law.

As to logic, the Morehart Children were the sole grantees of the easement. It was not appurtenant to any other interest in the 793 Acres. The Okies acquired full fee simple title to the Morehart Children's 25 percent interest in the 793 Acres. Thus, the Okies held full fee simple title to the entire dominant and servient tenements. There was no longer any land of another to which the easement could remain appurtenant. The easement was terminated by merger.

As to law, the authorities on which the Louderbacks rely do not support their argument.

In *Beyer v. Tahoe Sands Resort* (2005) 129 Cal.App.4th 1458, 1473-1478, the Court of Appeal held that merger did not apply where the plaintiffs held full title to the dominant tenement and only a beneficial interest in an adjoining servient tenement with legal title held by a trustee. That is not remotely similar to this case. In this case, the Okies acquired full fee simple title to both the dominant and servient tenements.

In *Zanelli v. McGrath, supra*, 166 Cal.App.4th 615, the Court of Appeal concluded that an easement was terminated by merger. In so concluding the court stated in dicta: "[E]ven when common ownership of a fee simple absolute estate exists in both the dominant and servient tenements, that ownership must be of the *entire* dominant and servient tenements and not merely a fractional share." (*Id.* at p. 629.) The court gave as examples cases where an easement served more than one parcel. The acquisition of less than all of the parcels by the servient owner

did not extinguish the easement as to the parcels not acquired. (*Id.* at p. 629-630, citing *Leggio v. Haggerty* (1965) 231 Cal.App.2d 873, 881-884; *Cheda v. Bodkin* (1916) 173 Cal.7 16-17; *Crease v. Jarrell* (1924) 65 Cal.App. 554, 560.) That is not the case here. The Okies acquired fee simple title to all of the interest to which the easement was appurtenant.

The Louderbacks claim the trial court failed to address the inequitable result that would prevail if the merger doctrine is applied. They cite *Hamilton Court, LLC v. East Olympic, L.P.* (2013) 215 Cal.App.4th 501, 505 (*Hamilton Court*), for the proposition that the doctrine of merger will not be applied where it will be inequitable to do so.

In *Hamilton Court*, a loan was secured by an easement giving the owner of the dominant tenement the exclusive right to occupy a portion of the servient tenement. The deed of trust securing the loan contained a provision stating that a transfer of the easement will not affect the priority of the deed of trust. Parties who acquired both dominant and servient tenements, sued the lender to quiet title to the easement. The Court of Appeal held that the doctrine of merger did not apply because it was contrary to the agreement that a transfer would not affect the priority of the deed of trust. A merger would result in the lender having no security. (*Hamilton Court*, *supra*, 215 Cal.App.4th 501, 506.)

Here there was no agreement to preserve the easement. The Morehart Children agreed to sell and the Okies agreed to buy, the 25 percent interest in the 793 Acres. Neither party claimed that the transaction was in any way inequitable.

The Louderbacks claim that the transaction was financed by the Morehart Children who took back a security interest on

7

the parcel they sold. The Louderbacks argue that the termination of the easement impaired the Morehart Children's security interest.

But the Morehart Children are not complaining, and the Louderbacks are not successors to their security interest. The Louderbacks cite no authority giving them standing to complain about the impairment of the Morehart Children's security interest, if indeed it still exists.

Moreover, the transaction that terminated the easement occurred in 1973. We are not inclined to undo the result of a transaction that occurred a half-century ago and has remained unchallenged until now.

## II. *Necessity*

The Louderbacks contend that the trial court refused to fully adjudicate their alternative claim of easement by necessity.

An easement by necessity arises when a grantor conveys a portion of his land in such a way that either the retained or conveyed parcel would be landlocked in the absence of a right of way. (See *Murphy v. Burch* (2009) 46 Cal.4th 157, 162-163.) When no such right of way is conveyed or reserved, an easement by necessity arises. (*Ibid*.) An easement by necessity requires: 1) "strict necessity," that is, the parcel would be landlocked without a right of way; and 2) common ownership at the time of the conveyance giving rise to the necessity. (*Id*. at p. 163.) In the absence of common ownership an easement will not be based on necessity alone. (*Id*. at p. 164.) The failure of the original grantee to assert an easement by necessity does not preclude a subsequent grantee from asserting it. (*Lichty v. Sickels* (1983) 149 Cal.App.3d 696, 700.)

The Louderbacks argue that the statement of decision is inadequate.  At trial there was a question -- whether the Louderbacks would be required to add neighboring property owners as parties to establish an easement by necessity.  The Louderbacks did not do so.  In its statement of decision, the trial court wrote:  "This issue having been fully tried the court finds that the plaintiff has failed to prove that facts necessary to prevail on this cause of action and has perhaps also not satisfied procedural pre-requisites to state a prima facie cause of action for said relief.  To the greatest extent possible the court incorporates into reference herein the factual findings relevant to this cause of action contained in the defendants' post-trial papers which the defense argued and makes all such said findings."

Code of Civil Procedure section 632 requires the trial court to issue a statement of decision upon a party's timely request.  Here the Louderbacks made a timely request.  A statement of decision is adequate if it fairly discloses the court's determination of the ultimate facts and material issues in the case.  (*Golden Eagle Ins. Co. v. Foremost Ins. Co.* (1993) 20 Cal.App.4th 1372, 1380.)

The Louderbacks complain that the trial court simply stated that they had failed to prove their cause of action for an easement by necessity, without providing any analysis or discussion of the ultimate facts.

First, the statement of decision requires only a fair disclosure of the trial court's determination of the ultimate facts.  The Louderbacks cite no authority requiring an analysis or discussion of the ultimate facts.

Second, if such analysis or discussion is required, the trial court incorporated by reference the Ranch's post-trial brief.  (See

9

*Swars v. Council of City of Vallegio* (1949) 33 Cal.2d 867, 872 ["A Court in making findings may, and commonly does incorporate by reference"].) That brief contains an extensive analysis of and discussion on why the Louderbacks cannot prevail, including a showing that there is no necessity.

Third, defects in the statement of decision are reviewed for harmless error. (See *F.P. v. Monier* (2017) 3 Cal.5th 1099, 1108.) The appellant has the burden not only to show error, but injury from the error. (*Robbins v. Los Angeles Unified School Dist.* (1992) 3 Cal.App.4th 313, 318.) To obtain reversal the appellant must show a reasonable probability that in the absence of the error, a result more favorable to the appellant would have been obtained. (*Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 574.) The Louderbacks do not attempt to show prejudice.

III. *Remaining Easement Claims*

The Louderbacks contend that the statement of decision was inadequate on their other easement claims.

The statement of decision was limited to the statement that the Louderbacks failed to carry their burden of proof on an easement by implication, prescription, or by equity. Assuming that is not sufficient, the Louderbacks failed to show prejudice. They make no attempt to show that but for the alleged error, it is reasonably probable that they would have achieved a more favorable result. (*Soule v. General Motors Corp.*, *supra*, 8 Cal.4th at p. 574.)

IV. *Statute of Limitations*

The Louderbacks contend that the Ranch's cause of action for quiet title is barred by the statute of limitations.

The Louderbacks cite *Muktarian v. Barmby* (1965) 63 Cal.2d 558, 560 (*Muktarian*), for the proposition that because the

10

Legislature has established no statute of limitations for quiet title actions, it is ordinarily necessary to refer to the underlying theory of relief to determine which statute applies.  The Louderbacks suggest that in this case a five-year limitation of action applies.

What the Louderbacks fail to disclose is that in the very next sentence to the sentence on which they rely, our Supreme Court in *Muktarian* stated, "In the present case, however, it is unnecessary to determine which statute would otherwise apply, for no statute of limitations runs against a plaintiff seeking to quiet title while he is in possession of the property."  (*Muktarian, supra*, 63 Cal.2d at p. 560.)  See *Levine v. Berschneider* (2020) 56 Cal.App.5th 916, 921.  Here cross-complainants have been in possession of the Ranch since 2010.  No statute of limitations applies.

## V. *No Harm Suffered*

The Louderbacks contend that the Ranch's cause of action for failure to disclose and negligent concealment are time barred and lack the essential element of damages.  But the trial court's finding that those causes of action result in no damages makes the issue moot.  The Louderbacks do not demonstrate that they suffered any harm.  We do not decide hypothetical issues. (*Consolidated Vultee Corp. v. United Automobile, etc.* (1946) 27 Cal.2d 859, 862-863.)

11

DISPOSITION

The judgment is affirmed.  Costs are awarded to the respondents.

NOT TO BE PUBLISHED.


GILBERT, P. J.


We concur:


YEGAN, J.


BALTODANO, J.

12

James F. Rigali, Judge

Superior Court County of Santa Barbara

_____

Williams Iagmin and Jon R. Williams for Plaintiffs and Appellants.

The Bankrupcy Firm, Kathleen P. March; Wagner, Anderson & Bright and Patrick F. Bright for Defendants and Respondents.